SO ORDERED.

Dated: October 26, 2017

Daniel P. Collins, Chief Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **In re:** | Chapter 12 Proceedings |
| **VA BENE TRIST, LLC,** | Case No. 2:17-bk-00993-DPC |
|     **Debtor.** | |
| **U.S. BANK NA, SUCCESSOR TRUSTEE TO BANK OF AMERICA, NA, SUCCESSOR IN INTEREST TO LASALLE BANK NA, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES, WMALT SERIES 2006-8,** | **UNDER ADVISEMENT RULING**<br><br>**[NOT FOR PUBLICATION]** |
|     **Movant,** | |
|     v. | |
| **VA BENE TRIST, LLC Debtor; and DAVID M. REAVES, Chapter 12 Trustee,** | |
|     **Respondents.** | |

Before the Court is a Motion for Relief from Automatic Stay ("Motion") filed by U.S. Bank NA ("Movant") regarding real property owned by Va Bene Trist, LLC ("Debtor") located at 30019 N. 150th St., Scottsdale, Arizona 85262 (the "Property") (DE 33).[1] The Court considered arguments made by the parties through written briefs and two oral arguments held on August 21 and September 20, 2017. The focus of these arguments was whether Arizona's six-year statute of limitations bars Movant from

---

[1] DE refers to docket entries in the administrative file concerning this chapter 12 case.

foreclosing its lien against the Property. For the reasons stated below, the Court now concludes that the Arizona statute of limitations (A.R.S. § 12-548) was tolled during the pendency of the First Bankruptcy and, therefore the statute of limitations has not yet expired. Movant's Motion is granted.

## I. BACKGROUND[2]

### A. The First Bankruptcy

1. On June 19, 2006, David Menken ("Borrower") executed a promissory note ("Note") and deed of trust ("DOT") in favor of Movant's predecessor in interest, AHM Mortgage ("AHM") (DE 33-2, Ex. A and B). The original DOT listed AHM as the beneficiary and Borrower as trustor. However, unbeknownst to AHM, before the DOT and Note were executed, equitable title to the Property had already been transferred from Borrower to Debtor.

2. Borrower stopped making payments on the Note in November 2006. On April 17, 2007, a notice of a private deed of trust sale was scheduled by AHM. The filing of the trustee's sale accelerated the debt. Under A.R.S. §§ 12-548 and 33-816, the statute of limitations to foreclose on the Property was six years from the date of acceleration of the Note. On November 21, 2007, Debtor filed a voluntary petition under Chapter 12 of the Bankruptcy Code[3] ("First Bankruptcy") (Case No. 2:07-bk-06227-GBN), which stayed the trustee's sale.

3. In the First Bankruptcy, an adversary proceeding (Case No. 2:08-ap-00844-GBN) was commenced by Debtor challenging the validity of AHM's lien on the Property. Debtor argued Borrower lacked an interest in the Property when Debtor signed the DOT and, therefore, AHM could not enforce the lien recorded against the Property. Bankruptcy

---

[2] The parties agree that, for the purpose of this decision, the pertinent facts are not in dispute.
[3] 11 U.S.C. §§ 101-1532 refers to the U.S. Bankruptcy Code, hereinafter the "Code."

Judge Nielsen applied the doctrine of equitable subrogation and determined that the DOT should be reformed to reflect Debtor as the trustor under the DOT (DE 33, Ex. A). Judge Nielsen found the lien held by AHM was enforceable against the Property.

4. Debtor appealed Judge Nielsen's decision. On January 9, 2012, the U.S. District Court for the District of Arizona ("District Court") affirmed Judge Nielsen's decision (Case No. 2:11-cv-00977-NVW). *See In re Va Bene Trist*, LLC, No. 2:07-BK-6227-GBN, 2012 WL 37346, at *1 (D. Ariz. Jan. 9, 2012), *aff'd sub nom. Va Bene Trist, LLC v. Washington Mut. Bank*, 556 F. App'x 647 (9th Cir. 2014)). Debtor appealed the District Court's decision. On February 25, 2014, the Ninth Circuit Court of Appeals affirmed Judge Nielsen's decision (Case No. 12-15169). *See Va Bene Trist, LLC v. Washington Mut. Bank*, 556 F. App'x 647 (9th Cir. 2014)).

5. On August 19, 2014, an assignment of the beneficial interest under the DOT from AHM to Movant was recorded with the Maricopa County Recorder.

6. Although AHM sought stay relief in the First Bankruptcy, the bankruptcy automatic stay remained in place throughout the First Bankruptcy until that case was dismissed on December 4, 2014.

**B.    The Second Bankruptcy**

7. On October 27, 2016, nearly two years after the First Bankruptcy was dismissed, Movant noticed a trustee's sale for January 26, 2017. On January 25, 2017, Debtor obtained an order from Judge Rayes of the District Court (Case No. 2:17-cv-00177-DLR) enjoining the scheduled foreclosure of the Property.[4] On February 2, 2017, Debtor commenced the instant Chapter 12 bankruptcy proceeding ("Second Bankruptcy"), which again stayed the scheduled private deed of trust sale.

8. On June 6, 2017, Movant filed its Motion pursuant to §§ 362(d)(1) and (2) of the Code in an attempt to move forward with its foreclosure sale (DE 33). Debtor filed

---

[4] This District Court case was dismissed on February 8, 2017.

3

its objection ("Objection") to the Motion on June 26, 2017, claiming that, under Arizona law, the Motion should be denied because the statute of limitations had passed so Movant could not foreclose its lien on the Property (DE 37).[5]

9. Movant filed its reply ("Reply") to the Objection on July 11, 2017, arguing that either § 108(c)(1) of the Code or the doctrine of equitable tolling tolled the statute of limitations while the bankruptcy automatic stay was in place during the First Bankruptcy (DE 37).

10. On August 21, 2017, the Court held a preliminary hearing on Movant's Motion. Additional briefs were filed by Movant (DE 43) and Debtor (DE 44). A subsequent hearing was held on September 20, 2017, after which the Court took the Motion under advisement.

## II. JURISDICTION

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b) and 1334.

## III. ISSUE

Whether Arizona's statute of limitations on an accelerated written debt was tolled while the Debtor enjoyed the bankruptcy automatic stay during the First Bankruptcy?

## III. ANALYSIS

### A. 11 U.S.C. § 108(c)

Section 108(c) of the Code provides:

[I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a

---

[5] Although the Motion was served upon the chapter 12 trustee, David Reaves ("Trustee") (DE 35), the Trustee has not responded to the Motion.

claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 . . . .

Some state and federal courts differ in their interpretation on how to apply § 108(c)(1) when a statute of limitations runs before a bankruptcy stay is lifted. *Young v. U.S.*, 535 U.S. 43, 53 (2002). Some circuits recognize § 108(c)(1) as an independent tolling provision. *Garbe Iron Works, Inc. v. Priester*, 99 Ill. 2d 84, 88, 457 N.E.2d 422, 425 (1983). This interpretation creates a day-for-day tolling accrual when an automatic stay is in place during a bankruptcy proceeding. *Id.* Other courts have determined § 108(c)(1) does not create an independent tolling provision. *See Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993) and *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 297 (C.A.5), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995). Instead, a party must look to state or federal law outside of § 108(c) to find an applicable law that provides day-for-day tolling. *See e.g.*, *U.S. v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993); *Simon v. Navon*, 116 F.3d 1, 5 (1st Cir. 1997).

In the circuits that do not consider § 108(c)(1) as an independent tolling provision, § 108(c)(2) is used to give creditors a thirty-day "grace" period in the event they are prevented from enforcing a valid claim against a debtor because the statute of limitations on the claim expired while the bankruptcy stay was in place. *Aslanidis*, 7 F.3d at 1073. The Second Circuit has determined this provision serves as a shield to prevent debtors from claiming bankruptcy, prolonging the bankruptcy process so that the statute of limitations on a creditor's claim runs out, and then seeking reprieve from the legal claim because the limitations time has run. *In re Morton*, 866 F.2d 561, 567 (2d Cir. 1989) (explaining that § 108(c) was intended to remedy the situation where a debtor filed

bankruptcy to allow the statute of limitations to run, and then used the statute of limitations as a complete defense).

The Ninth Circuit has aligned with the Second Circuit's approach to § 108(c). In *In re Spirtos*, 221 F.3d 1079 (9th Cir. 2000), the court made clear that if a statute of limitations period runs while the bankruptcy automatic stay is in place and there is no other state or federal law tolling the limitations period, the limitations period for filing a claim does not expire until thirty days after the end of the automatic stay. *Id.* at 1080-81. The court reasoned that its decision was consistent with other circuit courts that determined § 108(c)(2) applied in situations where no federal or state law tolled the statute of limitations and the period expired during a bankruptcy automatic stay. *Id.* The court also noted that its previous decision in *In re Hunters Run Ltd. P'ship*, 875 F.2d 1425 (9th Cir. 1989) was consistent with *Spirtos*. *Id.*

Following the Ninth Circuit's interpretation of § 108(c), this Court now concludes that § 108(c)(1) in itself does not toll the statute of limitations pertinent to Arizona foreclosure claims.

Having determined that § 108(c) is not itself a tolling statute, this Court turns to the question of whether there exists other applicable state or federal law that does recognize a tolling of the statute of limitations in this matter.

**B.     Tolling Under Arizona Law**

Movant argues that the Arizona Supreme Court case of *In re Smith*, 101 P.3d 637 (Ariz. 2004) stands for the proposition that, under Arizona law, a bankruptcy stay tolls day-for-day all Arizona statutory limitations periods for enforcing actions against a debtor.[6] In *Smith*, the Arizona Supreme Court analogized the bankruptcy stay to that of a

---

[6] The *Smith* court made a distinction between ministerial actions and enforcement actions. The court held that ministerial actions with the primary purpose of putting parties on notice, such as affidavits renewing a judgment, were not subject to a bankruptcy stay and therefore were not tolled during a bankruptcy action. *Smith*, 101 P.3d at 639. In contrast, the court held that the bankruptcy automatic stay did stay actions that "create, perfect or enforce liens or judgments." *Id.*

supersedes bond. *Id.* at 639. The court explained that during the time a supersedes bond is in place, the time to enforce a judgment is tolled day-for-day to replace the time the creditor was precluded from enforcement of that judgment. *Id.* at 640. The Arizona Supreme Court agreed that this methodology applied to enforcement actions stayed by a bankruptcy proceeding. *Id.*

The District Court subsequently interpreted the *Smith* decision to apply to a deed of trust foreclosure sale of real property in Arizona. In *Mlynarczyk v. Wilmington Sav. Fund Soc'y FSB*, No. CV-15-08235-PCT-SPL, 2016 WL 3524329, at *4-5 (D. Ariz. Apr. 29, 2016), the debtors granted a lien against their land through execution of a note and deed of trust. When the debtors subsequently defaulted, a private deed of trust sale was commenced. The debtors then filed for bankruptcy. The automatic stay was lifted during the bankruptcy so the parties could engage in negotiations to modify the loan. *Id.* Negotiations ultimately failed. The creditor then recommenced its trustee's sale once the bankruptcy was dismissed. The debtors sued the creditor in District Court arguing that the Arizona statute of limitations (A.R.S. § 12-548) had run on enforcement of the note and deed of trust. The creditor moved to dismiss the action arguing the statute of limitations had not yet run because it was tolled while the bankruptcy stay was in place during debtors' bankruptcy. The District Court agreed. Judge Logan interpreted *Smith* to apply to all enforcement actions stayed by bankruptcy proceedings. *Id.* Using the Arizona Supreme Court's reasoning, the District Court tolled the statute of limitations period from the filing of the debtors' bankruptcy case until the bankruptcy stay was lifted.

In view of both the Arizona Supreme Court's decision in *Smith* and the District Court's decision in *Mlynarczyk*, this Court now finds that the Arizona limitations period, A.R.S. § 12-548, was tolled during the pendency of the bankruptcy stay during the First Bankruptcy. *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011) ("When interpreting state law, federal courts are bound by decisions of the state's highest court.")

(internal citation omitted*); see also In re Stafford Pool & Fitness Cent.*, 252 B.R. 627, 631 (Bankr. D. N.J. 2000) (stating bankruptcy courts should give substantial deference to decisions of the district court interpreting bankruptcy law). This Court's decision is consistent with the Ninth Circuit's analysis of § 108(c): the tolling of the enforcement action does not come from § 108(c)(1) itself. Tolling instead comes from the Arizona Supreme Court's interpretation of its own statute of limitations.[7]

The statute of limitations began to run on April 17, 2007, when the initial trustee's sale accelerated the debt. If the limitations period continued without interruption, the statute of limitations would have expired on April 17, 2013. The filing of the First Bankruptcy on November 21, 2007, stayed the limitations clock after it had run for seven months and four days. The bankruptcy stay was not lifted until the dismissal of the First Bankruptcy on December 4, 2014. Therefore, when the bankruptcy stay was lifted upon dismissal of the First Bankruptcy, Movant had just under five years and five months (sixty-five months) from December 4, 2014, to foreclose on the Property. A trustee's sale was scheduled for October 27, 2016, well within the tolled limitations period. Nevertheless, the sale could not move forward because Debtor obtained an order from the District Court on January 25, 2017, enjoining Movant's foreclosure. Debtor then filed its Second Bankruptcy on February 2, 2017, again staying Movant from foreclosing on the Property, further tolling the Arizona statute of limitations.

This Court now concludes that Movant may still foreclose on the Property because the statute of limitations was tolled from the filing of the First Bankruptcy on November 21, 2007 until the December 4, 2014 dismissal of the First Bankruptcy. Since this Court has determined that Arizona's statute of limitations has not yet expired, it need

---

[7] Other circuits have also concluded that it is a state's prerogative to toll a statute of limitations during a bankruptcy stay. *See Pettibone Corp. v. Easley*, 935 F.2d 120, 121 (7th Cir. 1991) ("Federal law assured the plaintiffs 30 days in which to pick up the baton; if states want to give plaintiffs additional time, that is their business.").

8

not address Movant's contention that the Arizona statute of limitations was equitably tolled.

### C. Stay Relief

Movant claims that, as of May 17, 2017, it was owed at least $2,241,393.14 on the Note (DE 33). Movant points to Debtor's Schedule A filed in this bankruptcy (DE 10) which reflects the Property value as $1,650,000. Debtor has been in default under the Note since 2006. No payments have apparently been made on the Note by Debtor for over ten years. Movant contends there is no equity in the Property, that Movant's interests are not being adequately protected, that Debtor has failed to confirm a plan of reorganization in either the First or Second Bankruptcy, that the Property is not necessary for an effective reorganization and cause exists to lift the bankruptcy automatic stay. Debtor's Opposition (DE 36) and Supplement (DE 44) do not contest any of these points. Rather, Debtor's resistance to the Motion focuses solely on its statute of limitations defenses. As noted above, the Court has rejected Debtor's limitation arguments. The Court now finds the Debtor has no equity in the Property, Movant's lien interests in the Property are not adequately protected, the Property is not necessary for an effective reorganization of the Debtor, and cause exists to terminate the bankruptcy automatic stay.

## V. <u>CONCLUSION</u>

For the reasons stated above, the Court determines Movant, U.S. Bank NA, is entitled to relief from stay pursuant to 11 U.S.C. § 362(d). Accordingly,

**IT IS ORDERED** Movant's Motion is hereby granted in its entirety.

**SO ORDERED.**

9
Case 2:17-bk-00993-DPC    Doc 47    Filed 10/26/17    Entered 10/26/17 10:10:30    Desc
Main Document    Page 9 of 9